**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **VISHAY INTERTECHNOLOGY, INC. and VISHAY DALE ELECTRONICS, LLC,** | |
| **Plaintiffs,** | **Case No. 2:26-cv-1043** |
| **v.** | **JURY TRIAL DEMANDED** |
| **ISABELLENHÜTTE HEUSLER GMBH & CO. KG,** | |
| **Defendant.** | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Vishay Intertechnology, Inc. and Vishay Dale Electronics, LLC (together, "Vishay" or "Plaintiffs") file this Complaint against Defendant Isabellenhütte Heusler GmbH & Co. KG ("Defendant") for patent infringement under 35 U.S.C. § 271 and allege as follows:

## PARTIES

1. Vishay Intertechnology, Inc. is a corporation organized under the laws of the State of Delaware and headquartered at 63 Lancaster Avenue, Malvern, Pennsylvania 19355.

2. Vishay Dale Electronics, LLC is a limited liability company organized under the laws of the State of Delaware with a business address at 1122 23rd Street, Columbus, Nebraska 68601. Vishay Dale Electronics, LLC is a wholly owned subsidiary of its parent, Vishay Intertechnology, Inc.

3. Upon information and belief, Isabellenhütte Heusler GmbH & Co. KG is a company organized under the laws of Germany with an address of Eibacher Weg 3-5, 35683 Dillenburg, Germany. Defendant may be served with process in accordance with the Hague Convention.

## JURISDICTION AND VENUE

4. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, et seq. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Defendant. Defendant conducts business and has committed acts of patent infringement and/or induced acts of patent infringement by others in this Judicial District, the State of Texas, and elsewhere in the United States.

6. Defendant is subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in this State and District, including (a) at least part of its past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas. Upon information and belief, Defendant, directly or indirectly, participates in the stream of commerce that results in products, including the accused products, being made, used, offered for sale, and/or sold in the State of Texas and/or imported into the United States to the State of Texas.

7. Defendant is in the business of making, having made, using, offering for sale, and selling, in its own words, "electrical resistance materials, thermoelectric materials, as well as high-precision and high-performance resistors." (*See* https://www.isabellenhuette.com/en-us/ (last accessed November 6, 2026).) Defendant provides and offers products and services in this space, including those accused herein of infringement, to customers and potential customers located in Texas and in this District. On information and belief, Defendant distributes products directly to customers and through its partners or intermediaries, some of which are located in the State of Texas. On information and belief, Defendant derives significant financial benefits through its business in Texas and in this District.

8. On information and belief, Defendant has committed acts within or directed to this District and the State of Texas that give rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant has committed and continues to commit acts of infringement in this District and the State of Texas by, among other things, providing its products or services that infringe the asserted patents.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) because, among other things, Defendant is subject to personal jurisdiction in this District, Defendant has regularly conducted business in this District, certain of the acts complained of herein occurred in this District, and Defendant is not a resident of the United States and may be sued in any federal judicial district.

## **THE ASSERTED PATENTS**

10. This lawsuit asserts direct, contributory, and induced infringement of U.S. Patent Nos. 9,779,860 ("the '860 Patent"), 10,217,550 ("the '550 Patent"), and 10,796,826 ("the '826 Patent") (collectively, "the Asserted Patents"). The patent family related to the Asserted Patents is referred to collectively as Plaintiffs' "4-Terminal Resistors with TCR Compensation Patent Portfolio."

11. The '860 Patent was lawfully and properly issued by the United States Patent and Trademark Office on October 3, 2017. Each and every claim of the '860 Patent is valid and enforceable. A true and correct copy of the '860 Patent is attached as Exhibit A.

12. The '550 Patent was lawfully and properly issued by the United States Patent and Trademark Office on February 26, 2019. Each and every claim of the '550 Patent is valid and enforceable. A true and correct copy of the '550 Patent is attached as Exhibit B.

13. The ’826 Patent was lawfully and properly issued by the United States Patent and Trademark Office on October 6, 2020. Each and every claim of the ’826 Patent is valid and enforceable. A true and correct copy of the ’826 Patent is attached as Exhibit C.

14. Vishay Dale Electronics, LLC is the current owner by assignment of all right, title, and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office (“USPTO”).

15. Plaintiffs have complied with the requirements of 35 U.S.C. § 287. Specifically, Plaintiffs provide notice of products sold by Plaintiffs and protected by patents in the United States (and in some cases, other jurisdictions) via their Virtual Patent Marking webpage, available at https://www.vishay.com/en/patents/ (last accessed November 6, 2026).

16. Upon information and belief, Defendant has committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

## BACKGROUND OF PARTIES’ PRE-SUIT COMMUNICATIONS

17. In June 2015, Defendant contacted Plaintiffs seeking a cross-license to Plaintiffs’ 4-Terminal Resistors with TCR Compensation Patent Portfolio as it existed at the time. On March 14, 2017, Defendant provided a draft patent cross-license agreement for review by Plaintiffs. Plaintiffs concluded that they did not make or have plans to make a resistor related to the patent Defendant offered for cross-licensing and therefore had no need to cross-license. Plaintiffs remained open to licensing Plaintiffs’ 4-Terminal Resistors with TCR Compensation Patent Portfolio to Defendant, but the parties reached no licensing agreement.

18. On December 6, 2017, Defendant requested more details as to Plaintiffs’ 4-Terminal Resistors with TCR Compensation Patent Portfolio that related to Defendant’s products.

On February 13, 2018, Plaintiffs provided a patent licensing non-disclosure agreement and detailed claim charts that compared claims of Plaintiffs' then-existing 4-Terminal Resistors with TCR Compensation Patent Portfolio to Defendant's BVN and BVB resistors.

19. On March 7, 2018, Defendant offered a conclusory non-infringement position with no further analysis. Notably, after Defendant's initial conclusory position on non-infringement, Defendant's communications regarding Plaintiffs' patents focused exclusively on purported invalidity.

20. On June 8, 2018, Defendant identified purported prior art to Plaintiffs. This purported prior art omitted key limitations of Plaintiffs' patent claims. The parties continued licensing discussions, and on April 2, 2019, Plaintiffs provided a detailed letter discussing the claim language along with a claim chart outlining infringement of the '550 Patent—Plaintiffs' most recently issued patent from Plaintiffs' then-existing 4-Terminal Resistors with TCR Compensation Patent Portfolio. In response, Defendant abandoned the previously alleged prior art and shifted gears to identify different alleged prior art for another one of Defendant's resistors that had not been raised during the previous four years of discussions. That prior art, however, was previously submitted to the USPTO during prosecution of the '550 Patent, so this did not raise new issues. The parties did not reach a licensing agreement at this time.

21. Plaintiffs provided a timeline of the discussions between the parties and again offered a license on June 12, 2019, but the parties did not communicate about licensing Plaintiffs' patents until August 29, 2025. At that time, Plaintiffs provided notice of infringement of the '826 Patent, a later-granted patent in Plaintiffs' 4-Terminal Resistors with TCR Compensation Patent Portfolio. On October 25, 2025, Defendant again responded with the same purported prior art that Plaintiffs had already disclosed to the USPTO during prosecution of patents in Plaintiffs' 4-

Terminal Resistors with TCR Compensation Patent Portfolio, so this alleged prior art did not raise new issues.

22. The parties agreed to enter into a Confidential Settlement and Licensing Discussion Agreement to continue discussing a commercial resolution to Defendant's past and ongoing willful patent infringement, but no licensing agreement has been reached.

**THE INVENTIONS**

23. A typical surface-mounted current sense resistor is used to monitor current in a given circuit. The construction of such a device typically includes a flat strip of a resistive material coupled between two high-conductivity metal terminals forming the main terminals of the device. A pair of voltage sense terminals can also be formed in the main terminals, creating a four-terminal device. The main terminals carry the majority of the current passing through the device. The voltage sense terminals produce a voltage proportional to the current passing through the device, from which the actual current can be determined based on the sensed voltage and the resistance value of the device as dictated by Ohm's law.

24. An ideal current sense resistor would have a Temperature Coefficient of Resistance (TCR) that is close to zero, meaning that its resistance does not meaningfully change as temperature varies. However, most devices have a non-zero TCR that can lead to inaccurate voltage readings at the voltage sense terminals, particularly when the temperature of the device varies. In low ohmic current sense resistors and high current shunts, the resistive element length is short while the resistor is a standard length or, in the case of high current shunts, a long length. The long resistor length and short resistive element length cause a significant amount of copper termination metal to be in the current path. Copper has a TCR of approximately 3900 ppm/°C, while the resistive material is typically less than 100 ppm/°C. The large amount of copper in the

current path drives the overall TCR of the resistor to values that can be in the 800 ppm/°C range or greater, versus a desired TCR of less than 100 ppm/°C.

25. Prior art methods of adjusting TCR in current sense resistors manipulated the length of slots in the conductive elements of the resistor to adjust TCR. This approach does not lend itself to conventional resistor calibration equipment such as a laser or other cutting techniques that are typically used to reduce the width of the resistive element to increase the resistor's resistance value.

26. In contrast, the inventions claimed in the '860, '550, and '826 Patents provide a novel device and method for achieving TCR compensation in current sense resistors through a system of "rough" and "fine" TCR calibration slots working in combination. In this approach, a pair of rough TCR calibration slots is formed in the conductive strips on opposite sides of the resistor, between the main terminals and the voltage sense terminals. Each of these rough calibration slots has a depth that drives the TCR observed at the voltage sense terminals to a starting value. A separate "fine" TCR calibration slot is then formed in the resistive strip between the pair of voltage sense terminals. This fine slot is configured to drive the TCR observed at the voltage sense terminals to a desired TCR target range. A resistance calibration slot may also be formed between the main terminals to fine-tune the overall resistance value of the device to within a specified tolerance.

27. The '860 Patent describes and claims a device in which the first and second TCR calibration slots are formed with first and second openings at outer edges of the respective conductive strips, with the first outer edge and second outer edge on opposite sides of the resistor and each slot having a depth extending toward the resistive strip. The third TCR calibration slot opens at an edge of the first end of the resistive strip between the first and second voltage sense terminals. This configuration allows the voltage sense terminals and main terminals to be formed

contiguously in their respective conductive strips, with the voltage sense terminals and main terminals on opposite sides of the device.

28. The ’550 Patent describes and claims an improved configuration in which the first and second TCR calibration slots are formed at side edges of the respective conductive strips, with the first slot at the first side edge of the first conductive strip and the second slot at the second side edge of the second conductive strip, such that the two side edges are on opposite ends of the resistor. The third TCR calibration slot is positioned within the resistive strip between the voltage sense terminals. A fourth calibration slot is also formed in the resistive strip between the main terminals and configured to adjust the resistance value of the resistor to a specified tolerance.

29. The ’826 Patent describes and claims a device in which the first and second TCR calibration slots are formed at outer edges of the respective conductive strips, with the first outer edge and second outer edge on opposite sides of the resistor. The third TCR calibration slot is formed at an edge of the resistive strip between the first and second voltage sense terminals, and the fourth TCR calibration slot is formed in the resistive strip between the first and second main terminals. This patent explicitly claims the functional relationship between the calibration slots—namely, that the first TCR value obtained by the first and second slots and the second TCR value obtained by the third slot are different.

**THE INFRINGING DEVICES**

30. On information and belief, Defendant previously has made, used, sold, and/or offered for sale, and/or is currently making, using, selling, and/or offering for sale products that embody the technology claimed in the Asserted Patents because those products comprise resistors with temperature coefficient of resistance compensation (e.g., ISA-WELD BVN 1216, ISA-WELD BVB Size 2725) (the “Accused Products”).

## COUNT I – INFRINGEMENT OF THE ’860 PATENT

31. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

32. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the ’860 Patent, including but not limited to claims 1–11, literally and/or under the doctrine of equivalents, by, among other things, making, using, offering for sale, selling, and/or importing into the United States the Accused Products in a manner that infringes the ’860 Patent.

33. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the ’860 Patent, including but not limited to claims 1–11, literally and/or under the doctrine of equivalents.

34. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the ’860 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Accused Products.

35. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claims 1–11 of the ’860 Patent.

36. On information and belief, Defendant also contributes to the infringement of the ’860 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Accused Products. The components are not suitable for

substantial non-infringing use as they are specially designed and adapted to be TCR resistors and infringe the ’860 Patent.

37. Defendant has engaged in egregious infringement behavior with knowledge of the ’860 Patent, which has been duly issued by the USPTO and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the ’860 Patent and that the ’860 Patent is valid at least since the service of the February 13, 2018 letter from Plaintiffs to Defendant that provided notice of the ’860 Patent and of Defendant’s infringement of the ’860 Patent. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the ’860 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringed and infringes the ’860 Patent.

38. By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the ’860 Patent pursuant to 35 U.S.C. § 271.

39. By its actions, Defendant’s infringement of the ’860 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

40. By its actions, Defendant’s infringement of the ’860 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

41. Defendant’s acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs’ business, sales, reputation, and goodwill.

42. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a permanent injunction, damages adequate to compensate for the infringement, including lost profits and in no event less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II – INFRINGEMENT OF THE '550 PATENT

43. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

44. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '550 Patent, including but not limited to claims 1 and 17–20, literally and/or under the doctrine of equivalents, by, among other things, making, using, offering for sale, selling, and/or importing into the United States the Accused Products in a manner that infringes the '550 Patent.

45. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '550 Patent, including but not limited to claims 1 and 17–20, literally and/or under the doctrine of equivalents.

46. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '550 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Accused Products.

47. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claims 1 and 17–20 of the '550 Patent.

48. On information and belief, Defendant also contributes to the infringement of the ’550 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Accused Products. The components are not suitable for substantial non-infringing use as they are specially designed and adapted to be TCR resistors and infringe the ’550 Patent.

49. Defendant has engaged in egregious infringement behavior with knowledge of the ’550 Patent, which has been duly issued by the USPTO and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the ’550 Patent and that the ’550 Patent is valid at least since the service of the April 2, 2019 letter from Plaintiffs to Defendant that provided notice of the ’550 Patent and of Defendant’s infringement of the ’550 Patent. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the ’550 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringed and infringes the ’550 Patent.

50. By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the ’550 Patent pursuant to 35 U.S.C. § 271.

51. By its actions, Defendant’s infringement of the ’550 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

52. By its actions, Defendant’s infringement of the ’550 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

53. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and goodwill.

54. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a permanent injunction, damages adequate to compensate for the infringement, including lost profits and in no event less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT III – INFRINGEMENT OF THE '826 PATENT

55. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

56. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '826 Patent, including but not limited to claims 1–8 and 10, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States the Accused Products in a manner that infringes the '826 Patent.

57. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '826 Patent, including but not limited to claims 1–8 and 10, literally and/or under the doctrine of equivalents.

58. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '826 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Accused Products.

59. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claims 1–8 and 10 of the ’826 Patent.

60. On information and belief, Defendant also contributes to the infringement of the ’826 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Accused Products. The components are not suitable for substantial non-infringing use as they are specially designed and adapted to be TCR resistors and infringe the ’826 Patent.

61. Defendant has engaged in egregious infringement behavior with knowledge of the ’826 Patent, which has been duly issued by the USPTO and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the ’826 Patent and that the ’826 Patent is valid at least since the service of the August 29, 2025 letter from Plaintiffs to Defendant that provided notice of the ’826 Patent and of Defendant’s infringement of the ’826 Patent. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the ’826 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringed and infringes the ’826 Patent.

62. By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the ’826 Patent pursuant to 35 U.S.C. § 271.

63. By its actions, Defendant's infringement of the '826 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

64. By its actions, Defendant's infringement of the '826 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

65. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and goodwill.

66. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a permanent injunction, damages adequate to compensate for the infringement, including lost profits and in no event less than a reasonable royalty, treble damages, and attorneys' fees.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant as follows:

a. Each of the Asserted Patents has been and continues to be infringed by Defendant;

b. Defendant's infringement of each of the Asserted Patents has been, and continues to be, willful;

c. Each of the Asserted Patents is enforceable and not invalid;

d. A permanent injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents; or other such equitable relief as the Court determines is warranted;

e. An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interest and costs, post-judgment interest and costs, and an accounting;

f. An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

g. An award of all damages sustained by Plaintiffs as a result of Defendant's infringement, including ascertainable damages, the costs incurred by Plaintiffs for this action, and Plaintiffs' reasonable attorneys' fees;

h. A finding that this action is an exceptional case under 35 U.S.C. § 285, and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

i. Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

Dated: November 19, 2026

Respectfully submitted,

By: */s/ Ricardo J. Bonilla*

Ricardo J. Bonilla
Texas Bar No. 24082704
rbonilla@fr.com
Noel F. Chakkalakal
Texas Bar No. 24053676
chakkalakal@fr.com
James A. Mullen
Texas Bar No. 24149235
mullen@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 – Telephone
(214) 747-2091 – Facsimile

**COUNSEL FOR PLAINTIFFS VISHAY INTERTECHNOLOGY, INC. AND VISHAY DALE ELECTRONICS, LLC**